# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

WOODROW FLEMMING,

                          Plaintiff,

     v.                                            9:14-CV-384 (GLS/ATB)

RICHARD A. RENDLE, et al.,

                          Defendants.

WOODROW FLEMMING, Plaintiff Pro se
RYAN E. MANLEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge. Presently before the court is the defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 22). Plaintiff has responded in opposition to the motion. (Dkt. No. 25). Plaintiff has also filed two letter motions requesting that defendant Rendle be served. (Dkt. Nos. 27, 28).

**I.    Procedural History**

Plaintiff filed his original complaint on April 7, 2014. (Dkt. No. 1). Plaintiff attached six pages of exhibits to the complaint. (Dkt. No. 1-1). On November 17, 2014, after reviewing the complaint pursuant to 28 U.S.C. § 1915(e), Chief Judge Sharpe issued an order, dismissing one of plaintiff's claims with prejudice, dismissing the rest of the complaint without prejudice, and affording plaintiff leave to amend the claims

that were dismissed without prejudice. (Dkt. No. 5). Because plaintiff's original complaint was so difficult to decipher, I will base my summary of the complaint on Chief Judge Sharpe's initial order. (Dkt. No. 5 at 4-5).

In the original complaint, plaintiff alleged that on June 1, 2011, Corrections Officers ("CO") Hyde, Merkel, and Preve refused to pick up plaintiff's outgoing mail. (Complaint ("Compl.") at 8-9). Shortly thereafter, CO Preve returned to plaintiff's cell with Sergeant Santamore, who ordered plaintiff to pull his hands back into his cell and told plaintiff he was being moved. (*Id.* at 10-11). Sergeant Santamore, CO Preve, and CO Hyde then searched plaintiff's cell and "took" all plaintiff's property and legal work. (*Id.* at 11). Following this incident, plaintiff was placed on a "restricted diet" for two days and on a "deprivation order" for seven days (during which he was, inter alia, confined to a strip cell without bedding, clothing, or personal property). (*Id.* at 18). Plaintiff claimed that at the conclusion of a disciplinary hearing that was held on June 5, 2011, Lieutenant Rendle sentenced plaintiff to a period of confinement in the special housing unit ("SHU").[1] (*Id.* at 18).

The court liberally construed the complaint as raising claims of interference with his outgoing mail; denial of access to courts; confiscation of his legal papers;

---

[1] Chief Judge Sharpe noted that plaintiff had not indicated what the charges were or the duration of the disciplinary confinement. (Dkt. No. 5 at 4). Although plaintiff complained that the duration of his SHU confinement "exceeded" the duration of his criminal sentence, the court interpreted that statement to be referring to the aggregate length of his various disciplinary sentences and not the duration of the sanction imposed on July 5, 2011. (*Id.*)

2

deprivation of due process; and confinement which rose to the level of cruel and unusual punishment. Plaintiff also alleged that the defendants' misconduct was in retaliation for his grievance and litigation activity.[2] Plaintiff named Lt. Rendle, Sgt. Santamore; CO Hyde, and CO Preve. (Compl. at 1-2). However, Chief Judge Sharpe also noted that the complaint asserted claims against Superintendent Rock and CO Merkel and found that plaintiff "intended to name them as defendants." (Dkt. No. 5 at 5). Thus, he ordered these individuals to be added as defendants. (Dkt. No. 5 at 5, 18).

Notwithstanding the addition of two new defendants, Chief Judge Sharpe ultimately dismissed plaintiff's cell search and property claim with prejudice; but dismissed his mail interference claim, access to courts claim, conditions of confinement, due process,[3] retaliation, and claims against supervisory officials without prejudice. (Dkt. No. 5 at 18). Chief Judge Sharpe gave plaintiff thirty days to file an amended complaint. (*Id.*)

On December 3, 2014, plaintiff filed his amended complaint, with a new set of

---

[2] Chief Judge Sharpe noted that plaintiff asserted thirteen causes of action "some of which do not identify the law or statute allegedly violated and several of which overlap." (Dkt. No. 5 at 5). Thus, Chief Judge Sharpe attempted to determine the legal basis for each cause of action and considered the duplicative claims together. (*Id.*)

[3] The court must point out that this is not the first time that plaintiff has made the allegations about his inordinate confinement in SHU without a Rule Book. Very recently, Senior Judge Lawrence A. Kahn dismissed one of plaintiff's actions in which he noted that plaintiff was claiming that disciplinary proceedings from 2005, 2013 and 2014 were conducted without a Rule Book, a claim he made in this action as well (*See* AC at 7, 11, CM/ECF pp. 8, 12). *Flemming v. Annucci*, 9:14-CV-484 (LEK/ATB) (Dkt. No. 11 at 2-3) (N.D.N.Y. July 2, 2015).

3

exhibits attached. (Amended Complaint ("AC")) (Dkt. No. 7, 7-1). In his amended complaint, plaintiff repeated the mail incident, but added facts indicating that, during or shortly after the mail incident on June 1, 2011, in the course of being moved "from and to his cell/room," he was assaulted by defendants Hyde, Merkel and Preve, who caused serious injury to plaintiff's right hand, left wrist, and thumb. (AC at 7). Plaintiff claimed that the assault was unjustified, and he was in restraints at the time of the assault. Plaintiff also alleged that defendants Santamore and Rendle were "on duty" at the time and caused plaintiff to be moved and assaulted. (*Id.*) Plaintiff also claimed that defendants Rendle, Santamore, and Rock (the Superintendent) were liable for hiring and inadequately supervising these defendants. (*Id.*) Plaintiff also alleged that a new defendant – Nurse Waterson – denied plaintiff medical care for his injuries. (*Id.* at 7-8).

Chief Judge Sharpe reviewed the amended complaint and issued an order dated April 15, 2015. (Dkt. No. 10). Judge Sharpe found that the amended complaint contained numerous allegations of mistreatment arising out of plaintiff's confinement at Upstate Correctional Facility, but that those allegations were "wholly conclusory" and "generally without reference to particular defendants." (Dkt. No. 10 at 3). In fact, in one part of the amended complaint, plaintiff alleges conduct by seven completely unrelated defendants, who were not mentioned in the caption or in the list of defendants appearing in the "Parties" section of the complaint. (*Id.*) Plaintiff included alleged conduct which occurred 2005, including retaliation and "Hostile Discrimination." (AC

4

at 8, 11). Plaintiff claimed that he was held in SHU for fourteen years without due process or a rule book.

Chief Judge Sharpe culled[4] the amended complaint down to six claims against defendants Rendle, Santamore, Hyde, Preve, Rock, and Waterson[5] – (1) excessive force on June 1, 2011; (2) denial of proper medical care for injuries inflicted in the alleged assault; (3) denial of access to the courts; (4) deprivation of a liberty interest without due process; (5) unconstitutional conditions of confinement; and (6) retaliation for the exercise of his right to file grievances and engage in litigation. (Dkt. No. 10 at 4).

After reviewing the six claims, Chief Judge Sharpe found that only the June 1, 2011 excessive force and denial of medical care claims survived sua sponte review and required a response. (Dkt. No. 10 at 5). Chief Judge Sharpe dismissed all the other claims ***with prejudice***. (Dkt. No. 10 at 5-13). The claims were dismissed with prejudice because an opportunity to amend is not required when plaintiff has already been afforded the opportunity to amend, but has failed to cure the deficiencies in his amended pleadings. (Dkt. No. 10 at 5 n.7) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is not an abuse of discretion when movant has

---

[4] Plaintiff asserted twenty causes of action, some of which did not identify the violation alleged and many which overlapped with others. As for the original complaint, Chief Judge Sharpe attempted to determine the legal basis for each cause of action and considered the duplicative claims together. (Dkt. No. 10 at 4 n.5).

[5] Chief Judge Sharpe added Nurse Waterson as a defendant because plaintiff failed to do so, notwithstanding the claims he made against her in the body of the complaint. (Dkt. No. 5 at 13).

5

repeatedly failed to cure deficiencies in pleading); *Robinson v. Fischer*, No. 9:13-CV-1545, 2014 WL 1289611, at *6 (N.D.N.Y. Mar. 31, 2014); *Flemming v. Goord*, No. 9:11-CV-1026, 2013 WL 317059, at *6 (N.D.N.Y. Jan. 28, 2013). The only remaining claims were (1) the excessive force claim against defendants Rendle, Santamore, Hyde, Preve, and Merkel and (2) the medical indifference claim against defendant Waterson. On June 30, 2015, these remaining defendants filed their motion to dismiss.[6] (Dkt. No. 22). For the following reasons, this court does not agree that the action may be dismissed based on the statute of limitations and will recommend denial of the defendants' motion.

## II. Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"

---

[6] At the time that defendants filed their motion to dismiss, defendant Rendle had not been served. He was subsequently served and joined the motion to dismiss by letter dated July 27, 2015. (Dkt. No. 26). Plaintiff has filed two letters requesting that defendant Rendle be served. (Dkt. Nos. 27, 28). These motions may be denied as moot.

*Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Turkman v. Hasty*, 789 F.3d 218, 226 n.6 (2d Cir. 2015) (citations omitted); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB

decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties); *Farid v. Bouey*, 554 F. Supp. 2d 301, 313-14 (N.D.N.Y. 2008) (taking judicial notice of documents relating to plaintiff's prior Article 78 proceeding in State Court).

### III. **Statute of Limitations**

#### A. **Legal Standards**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of

action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

**B.   Application**

In his original complaint, plaintiff alleged only that on June 1, 2011, at approximately 6:05 am, defendants Hyde and Merkel refused to pick up plaintiff's mail. (Compl. at 8). Plaintiff alleged that called for a Sergeant, but he did not come. (Compl. at 9). Five minutes later, defendant Preve came by plaintiff's cell with a supply cart. Plaintiff asked defendant Preve to take his mail, but Preve told plaintiff that the mail was gone. Plaintiff asked defendant Preve to call the Sergeant, but defendant Preve told plaintiff that the Sergeant would not come. (*Id.*)

Plaintiff stated that he stood by his door with his "slot" open, and defendant Preve left and came back with defendant Sergeant Santamore. (Compl. at 10). Plaintiff stated that he attempted to explain his problem with the mail, but defendant Santamore told plaintiff to pull his hands back and they "would talk." (*Id.*) When plaintiff pulled his hands back, defendant Santamore told plaintiff to "pack up you is [sic] moving now." (*Id.*) Plaintiff was then handcuffed by defendant Preve, Hyde, and Santamore "and move . . . from 11 B 6 to 11 A 22 cell on June 1, 2011." (Compl. at 11). Plaintiff

9

claimed that his "level" was dropped to "level 1" which resulted in a deprivation of privileges. (*Id.*)

Plaintiff stated that defendants Santamore, Preve, and Hyde put plaintiff in the new cell, went back to his old cell and searched all his property, ultimately taking all plaintiff's property and legal work. (*Id.*) Plaintiff then complained about being made to eat "diet loaf" for two days and complained about the condition of his confinement, stating that defendant Santamore, Hyde, and Preve punished plaintiff by depriving him of bedding and other necessities. (Compl. at 12).

In support of his first complaint, plaintiff attached the Superintendent's response to the grievance that he filed regarding the June 1, 2011 incident. (Dkt. No. 1-1 at 1). The grievance was entitled "improper cell search/move/denie [sic]." (*Id.*) The Superintendent's decision stated that the Officers did pick up plaintiff's mail, and that they denied tearing up or stealing legal work, and stated that plaintiff was moved based upon his "PIMS level drop." Plaintiff had put stacks of paper through his hatch so that it could not be closed, but "after several orders, plaintiff complied and the hatch was closed." (*Id.*)

Chief Judge Sharpe's first order dismissed the complaint without prejudice, finding no constitutional violation stated, but afforded plaintiff the opportunity to amend. In plaintiff's amended complaint, he now claims that at some point during the above incident, he was assaulted by defendants Hyde, Merkel, and Preve "while

10

Santamore, Rendel [sic] order and control." (AC at 6, CM/ECF p.7). Plaintiff also states that Nurse Waterson denied plaintiff "treatments" and Nurse Buffham (who is not a defendant) "denied to record and write down all plaintiff Flemming['s] injuries." (*Id.*) Plaintiff claims that he injured his right hand, left wrist, left thumb." (*Id.*) Although plaintiff does not describe how he was assaulted or how his hand was injured, he does state that he was handcuffed in front, wearing a waist chain, and using a cane to walk when the alleged assault took place. (*Id.*)

In support of the amended complaint, plaintiff has attached completely different exhibits, none of which were attached to the original complaint,[7] including an Ambulatory Health Record ("AHR") which states that plaintiff had an injury to his right hand – 5th digit blister; his left wrist was swollen, and he had a small abrasion to his thumb. (Dkt. No. 7-1 at 1). The examination by Nurse Buffham showed no gross deformities, full range of motion in his neck, extremities, and digits. Nurse Buffham prescribed soap and water for his right hand and left thumb and a cool washcloth for his left wrist. Nurse Buffham also ordered an x-ray for plaintiff's left wrist. The issue with this medical record is that it is dated January 1, **2006** – almost five years prior to the alleged June 1, 2011 assault. The last page of plaintiff's exhibit is a "supplementary sheet" for a misbehavior report, dated January 4, 2006, which states that "after mechanical restraints were removed inmate Flemming refused to bring his arms back in

---

[7] None of the original exhibits are attached to the amended complaint.

11

the cell. He refused several orders to do so and only complied when Capt. Uhler came to the cell and ordered him to do so." (Dkt. No. 7-1 at 5).

Defendants argue that if the date on the medical record which plaintiff has attached to the amended complaint relates to the alleged assault, then plaintiff's claim is barred by the statute of limitations because the "injuries" to his hands, wrist, and fingers occurred five years prior to the incident and more than eight years prior to the filing of the amended complaint.[8] All the other claims relating to the June 1, 2011 incident have been dismissed with prejudice. (Dkt. No. 10 at 13). There would be no reason to equitably toll the statute of limitations.[9] Plaintiff is no stranger to the court and is well aware of how to file a lawsuit.[10]

Plaintiff's response papers are very difficult to comprehend, in part because he continues to believe that all of his claims survived. (*See gen.* Dkt. No. 25). Thus, he is arguing that all of his claims are within the statute of limitations. However, the only remaining issues are the alleged assault and the alleged denial of medical care. All of

---

[8] Plaintiff did not raise this claim in his original complaint, thus, the court would based the statute of limitations calculation on plaintiff's amended complaint. However, even if the court used the April 2014 date that plaintiff filed his original complaint, anything that occurred in 2006 would still be almost eight years after the accrual of the claim.

[9] In "rare and exceptional" cases, the doctrine of equitable tolling may apply to defeat a argument that the action was not timely filed. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). *See also Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.").

[10] A review of this court's electronic filing system shows that plaintiff has filed approximately forty civil rights cases in the Northern District of New York, many of which are still open.

plaintiff's other claims have been dismissed with prejudice. Therefore, the court will limit itself to a discussion of plaintiff's papers as they relate to the surviving issues.

With respect to the assault, plaintiff states that the 2006 documents that he attached to his amended complaint are "wrong" and should be removed. (Dkt. No. 25 ¶ 11). Plaintiff still maintains that he was assaulted on June 1, 2011, and that Nurse Waterson denied plaintiff medical care, although now he does not mention Nurse Buffham. (*Id.*) Plaintiff claims that Nurse Waterson refused to record plaintiff's injuries.[11] (Dkt. No. 25 ¶¶ 17-18). Plaintiff attaches eighty-five pages of exhibits, none of which relate to the assault and most of which do not even relate to 2011. Many of the documents appear to relate to his dismissed claim that he was denied access to courts, however, they do not relate to the time period in question. (*See* Dkt. No. 25-1 at 1-16). He includes medical reports from 2002, 2003, 2004 and 2005.[12] (*Id.* at 22-28, 32, 36, 38-39, 49, 50). Plaintiff also includes more recent medical records. (*Id.* at 41-

---

[11] His response also states that "defendants Fifiled; Bishop; King; Zerniak; Cook; Nason; Russel; Rock; and Waterson" deliberately interfered with "plaintiff Flemming medical [sic] prescribed treatment solely for the purpose to cause [sic] plaintiff Flemming unnecessary pain . . . ." (Dkt. No. 25 ¶ 31). Only defendants Rock and Waterson have ever been defendants in this action (and defendant Waterson is only a defendant because the court added him). Thus, it is unclear to what plaintiff is referring. He has never claimed that he was denied "prescribed treatment," and he may be confusing this action with one of the many other actions that plaintiff has filed in the Northern District of New York. Plaintiff appears to recycle his complaints, cutting and pasting information. This occasionally results in facts from previous complaints appearing at random intervals in the current amended complaint.

[12] Plaintiff may be attempting to show that he has many medical problems. The court does not dispute this fact, but records of plaintiff's general medical condition have nothing to do with the alleged assault that took place on June 1, 2011.

13

43–2015; 44-48, 51-54– 2014). Plaintiff includes one Inmate Grievance Resolution Committee response to a 2011 grievance that was dated June 1, 2011, but refers to sleep apnea devices. (*Id.* at 33-34). Finally, plaintiff has included a number of form-memoranda, dated in 2013 and 2014 in which the Superintendent of Upstate has responded to an unknown inquiry by letting plaintiff know that his letter was referred to another official for response.[13] (*Id.* at 55-76). ***None*** of the documents attached to the amended complaint, medical or otherwise, deal with injuries to plaintiff's hands and fingers or relate to the alleged assault in 2011.

While it is tempting to agree with defendants, and the court has serious doubts about whether plaintiff is attempting to avoid dismissal of his otherwise dismissed complaint by adding an assault claim to the June 2, 2011 incident, the court cannot make a determination that the statute of limitations has run. While the statute of limitations would have run for an incident in 2006, the amended complaint alleges that the incident occurred in 2011, and plaintiff maintains that he is complaining about an assault that occurred in 2011.[14] Although the injuries listed in the 2006 medical report are surprisingly similar to the injuries that plaintiff says he suffered in 2011, the court cannot make such findings based upon an attachment to his amended complaint, which

---

[13] The name of that official is listed at the bottom of the memoranda.

[14] If the incident did occur in 2011, it is within the three-year statute of limitations.

plaintiff now states was attached "in error."[15]

Plaintiff is warned, however, that any attempt to mislead counsel or the court as to the incident in question merely to avoid dismissal could subject him to sanctions if appropriate. Fed. R. Civ. P. 11(b). This would not be the first time that plaintiff has had issues with frivolous actions or with misrepresentation. On July 16, 2015, Magistrate Judge Christian Hummel revoked plaintiff's IFP status as a sanction for his misrepresentations. *See Flemming v. King*, No. 9:14-CV-316 (DNH/CFH) (Dkt. No. 22). As noted in Magistrate Judge Hummel's decision, plaintiff was found to have three-strikes pursuant to 28 U.S.C. § 1915(g) in 2007.[16] (*Id.* at 3-6). Although plaintiff is no longer subject to the three-strikes rule because he is no longer incarcerated, there are still sanctions available for improper conduct. (*Id.* at 6-16).

---

[15] Notwithstanding this recommendation, the court does note that it is curious that plaintiff described the entire June 1, 2011 "mail" incident, but never mentioned the assault in his original complaint. The original complaint stated that only that he was handcuffed and moved to a new cell. (Compl. at 10-11). Plaintiff originally alleged that the defendants went back to his old cell after they moved him and dropped his security level, and then searched his cell, destroying some of his legal documents in the process. (*Id.*) He also appears to have failed to mention the assault in his grievance which was attached to the original complaint. The court notes that his failure to bring a grievance on the issue may also indicate a failure to exhaust his administrative remedies. Once again, this court may not make such findings on a motion to dismiss.

[16] The "three strikes" rule provides that
> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Thus, although the court will give plaintiff the benefit of the doubt because his amended complaint states that he was assaulted on June 1, 2011 and then denied medical care for his "injuries," this does not foreclose defendants from bringing a properly supported summary judgment motion on these remaining issues.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 22) be **DENIED**, and it is

**ORDERED**, that plaintiff's letter motions to "serve" defendant Rendle (Dkt. Nos. 27, 28) are **DENIED AS MOOT** because defendant Rendle has appeared through counsel and joined in the motion to dismiss.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 13, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge